## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER GUZZI, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  10-1112 |
| JOSEPH MORANO and | : | |
| U.S. BENEFIT PARTNERS LLC, | : | |
| | : | |
| Defendants. | : | |

### <u>MEMORANDUM</u>

BUCKWALTER, S. J.                                      October 6, 2011

Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended

Complaint for Lack of Jurisdiction and/or for Failure to State a Claim, or, in the Alternative, to

Transfer for Forum Non Conveniens.  For the following reasons, the Motion is denied in its entirety.

## I.      FACTUAL BACKGROUND

According to the facts set forth in the First Amended Complaint, Defendant U.S. Benefit

Partners, LLC ("USBP") is in the business of, among other things, selling insurance policies through

large marketing channels.  (Am. Compl. ¶ 16.)  In April of 2005, Plaintiff Peter Guzzi entered into a

verbal agreement with Defendant USBP and its part-owner, Defendant Joseph Morano, whereby

Defendants agreed to pay Plaintiff one-third of USBP's gross profits on distribution channels

secured by the Plaintiff.  (<u>Id.</u> ¶ 17.)  As a direct result of Plaintiff's efforts, USBP secured several

high level contracts.  (<u>Id.</u> ¶ 18.)  In addition, USBP secured distribution relationships that totaled

more than four million dollars in revenue.  (<u>Id.</u> ¶ 19.)

In March 2007, Defendants "wrongfully" terminated their agreement with Plaintiff.  (<u>Id.</u> ¶¶

20-21.)  Despite Plaintiff's efforts and success and despite his generation of significant revenue for the Defendants, Defendants did not compensate him pursuant to the agreement.  (Id. ¶ 22-23.) Likewise, Plaintiff was not compensated for future revenue for application renewals, as provided in the oral contract.  (Id. ¶ 24.)  Ultimately, at the time of Defendants' breach, Plaintiff was owed commissions and/or salary in excess of $175,000, plus future profits on insurance contract renewals. (Id. ¶ 25.)  Despite his demands, these amounts have not been paid by Defendants.  (Id. ¶ 26.)

On March 15, 2010, Plaintiff initiated the present litigation.  Following some initial motion practice, Plaintiff filed a First Amended Complaint on March 18, 2011, setting forth three causes of action.  Count I alleges breach of contract.  (Id. ¶¶ 31-34.)  Count II claims a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S § 260.2a.  (Id. ¶¶ 35-42.)  Finally, Count III seeks an accounting of the precise sums owed to him under the aforementioned contract. (Id. ¶¶ 43-46.)  Plaintiff further alleges that Defendant Morano intermingled USBP's corporate funds with his own funds and diverted corporate funds for his own use, thereby making USBP his "alter ego."  (Id. ¶ 27.)  Accordingly, Plaintiff asserts that the corporate veil should be pierced, making Defendant Morano personally liable for any breach of contract by USBP.  (Id. ¶¶ 28-29.)

On April 1, 2011, Defendants filed the present Motion to Dismiss for Lack of Jurisdiction, Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion to Transfer this Action for Forum Non Conveniens.  Following receipt of an extension of time, Plaintiff filed his Response in Opposition on June 17, 2011.  Defendants filed a Reply Brief on July 28, 2011, Plaintiff submitted a Sur-reply Brief on August 29, 2011, and Defendants filed a Reply to Plaintiff's Sur-reply on September 14, 2011.

Faced with this broad-reaching Rule 12 Motion, the Court turns first to Defendants' personal

jurisdiction argument.  Second, the Court discusses Defendants' Motion to Dismiss for failure to state a claim.  Finally, the Court considers the Motion to Dismiss for forum non conveniens.

## II.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION[1]

### A.   Standard for Motion to Dismiss for Lack of Personal Jurisdiction

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom, and to resolve all factual disputes in favor of the plaintiff.  Fed. R. Civ. P. 12(b)(2); see also Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  The Rule, however, "does not limit the scope of the court's review to the face of the pleadings"; rather the court must consider any affidavits submitted by the parties.  Scott v. Lackey, No. Civ.A.02-1586, 2005 WL 2035598, at *1 (M.D. Pa. Aug. 11, 2005).

Although a defendant has the initial burden of raising the defense of lack of personal jurisdiction, once such a defense is raised, the burden shifts to the plaintiff to demonstrate facts that suffice to support an exercise of personal jurisdiction.  Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987); Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005).  Plaintiff may do so through affidavits or

---

[1] At the outset, Plaintiff argues, without any legal citation in support, that the Court should dismiss Defendants' Motion for failure to provide a certification indicating that the maker of any statement will be subject to penalties if any of the statements are willfully false.  (Pl.'s Resp. Opp'n 2.)  Federal Rule of Civil Procedure 11, however, expressly provides that, "[u]nless a rule or statute specifically states otherwise, *a pleading need not be verified or accompanied by an affidavit.*"  Fed. R. Civ. P. 11(a) (emphasis added).  Rather, by signing a motion, an attorney verifies that the motion is not frivolous, is being submitted in good faith, and has factual support.  Id. at 11(b).  Defendants' counsel clearly signed the Motion.  Nothing in the Rule otherwise requires, as Plaintiff claims, "a certification of an individual with . . . personal knowledge of the circumstances which form the basis of this litigation."  (Pl.'s Resp. Opp'n 2.)

competent evidence that show sufficient contacts with the forum state.  De Lage Landen Fin. Servs.,

Inc. v. Rasa Floors, LP, No. Civ.A.08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008).

Such contacts must be established with "reasonable particularity," to present a prima facie case.

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting

Provident, 819 F.2d at 437).  If the plaintiff meets this burden, the defendant must then establish the

presence of other considerations that would render personal jurisdiction unreasonable.  De Lage,

2008 WL 4822033, at *3 (citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)).

     **B.**     **Discussion**

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal

jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the

federal court sits.  Fed. R. Civ. P. 4(k)(1)(A); see also Martin v. Citizens Fin. Group, Inc., No.

Civ.A.10-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010).  Pennsylvania law, which

governs the present case, necessitates the application of Pennsylvania's long-arm statute, 42 Pa. C.S.

§ 5322.  Under this statute, personal jurisdiction of Pennsylvania courts over nonresident defendants

is permitted "to the fullest extent allowed under the Constitution of the United States and may be

based on the most minimum contact with this Commonwealth allowed under the Constitution of the

United States."  42 PA. CONS. STAT. § 5322(b); see Mellon Bank, 960 F.2d at 1221 ("The

Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over

nonresident defendants to the constitutional limits of the due process clause of the fourteenth

amendment.").  Therefore, a court need only inquire whether the exercise of personal jurisdiction

over the defendant would be constitutional under the Due Process Clause.  Mellon Bank, 960 F.2d

at 1221.  Pursuant to such constitutional considerations, physical presence within the forum is not

required to establish personal jurisdiction over a nonresident defendant.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Instead, personal jurisdiction may be based on either a defendant's general contacts or his specific contacts with the forum.  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

"General jurisdiction depends on a defendant having maintained 'continuous and systematic contacts' with the forum state." D'Jamoos es rel. Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 107 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)).  Proof of such contact requires a showing of "extensive and pervasive" activity in the forum state.  See Reliance Steel Prods. Co. v. Watson, Ess, Marshall, & Engass, 675 F.2d 587, 589 (3d Cir. 1982) (quotations omitted).  The defendant's contacts need not be related to the cause of action being litigated.  McMullen v. Eur. Adoption Consultants, Inc., 109 F. Supp. 2d 417, 418 (W.D. Pa. 2000).  If the foreign defendant "maintains 'continuous and systematic' contacts with a state, the state has general personal jurisdiction over the party, and the non-resident may be sued in that state on any claim." Wilmington Fin., Inc. v. Moonis, No. Civ.A.08-2365, 2008 WL 4661033, at *3 (E.D. Pa. Oct. 21, 2008) (quotations omitted).

In the absence of "continuous and systematic" contacts, a plaintiff may rely on "specific jurisdiction" where the cause of action is related to or arises out of the defendant's contacts with the forum.  IMO Indus., 155 F.3d at 259 (citing Helicopteros, 466 U.S. at 414 n.8).  Proper establishment of specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test.[2]  Louis A. Grant, Inc. v. Hurricane Equip., Inc., No. Civ.A07-438, 2008 WL 892152, at *3

---

[2] Both Plaintiff and Defendant cite the three-pronged test set forth by the Pennsylvania Superior Court in Proctor & Schwartz v. Cleveland Lumber Co., 323 A.2d 11 (Pa. Super. 1974).  The Pennsylvania Supreme Court, however, completely abrogated the Proctor test in favor of the

(W.D. Pa. Apr. 2, 2008).  First, the plaintiff needs to show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum."  IMO Indus., 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  Second, the plaintiff's claim must "arise out of or relate to those activities."  Helicopteros, 466 U.S. at 414.  Third, the reviewing court should consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"  Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (enumerating the three elements of specific jurisdiction).

       In the present case, Plaintiff does not assert that the Court has general jurisdiction over the Defendants.  Rather, he claims that Defendants have minimum contacts with Pennsylvania, from which the present dispute arises, such that this Court's exercise of jurisdiction over them will not violate traditional notions of fair play and substantial justice.  Defendants, in turn, respond that any contacts with Pennsylvania are too attenuated to constitutionally allow for the extension of personal jurisdiction over them.  In an effort to resolve this dispute, the Court now turns to an analysis of the three steps enumerated by the Supreme Court.

       1.       **Whether Defendants Have Sufficient Minimum Contacts with Pennsylvania to Warrant the Exercise of Personal Jurisdiction**

       To satisfy the first two components of the specific jurisdiction test, the acts identified by plaintiff must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  It has

---

more flexible approach adopted by the United States Supreme Court decision in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) and its progeny.  See Kubik v. Letteri, 614 A.2d 1110, 1115 (Pa. 1992).  Accordingly, Proctor is no longer good law.

6

long been recognized that minimum contacts necessary to support specific jurisdiction exist only where the defendant "has purposefully directed its activities toward the residents of the forum state . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" IMO Indus,, 155 F.3d at 259 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958) (other internal quotations omitted)).  "This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are 'random, fortuitous,' or 'attenuated,' or that result from the unilateral activity of another party or a third person."  Pullman Fin. Corp. v. Hotaling, No. Civ.A.07-1703, 2008 WL 2563372, at *4 (W.D. Pa. June 24, 2008) (quoting Burger King, 471 U.S. at 475).  As noted by the United States Court of Appeals for the Third Circuit, "in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests . . . .  With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations . . . . specific jurisdiction is the cost of enjoying the benefits."  O'Connor, 496 F.3d at 323 (internal citations omitted).

In the context of a contract dispute between residents of different states, "[m]erely entering into a contract with a forum resident does not subject a nonresident to personal jurisdiction." Quandel Grp. v. Chamberlin Co., Inc., No. Civ.A.98-5762, 1999 WL 382878, at *2 (E.D. Pa. June 14, 1999) (citations omitted).  Nonetheless, "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum] State."  McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957).  The question of who initiated the relationship is less significant than "the intention to establish a common venture extending over a substantial period of time."  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150-51 (3d Cir. 2001).  When assessing whether

minimum contacts are present in a contracts case, a court should look to the terms of the agreement, the place and character of prior negotiations, performance, contemplated future consequences, resolution of post-contract difficulties, and the course of dealings between the parties.  Id. at 150; Mellon Bank, 960 F.2d at 1223.  Additionally, mail and telephone contacts about the performance of the contract and directed at the forum state may support jurisdiction.  Shanks v. Wexner, No. Civ.A.02-7671, 2003 WL 1343018, at *3 (E.D. Pa. Mar. 18, 2003) (citing Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993)).  Finally, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  Gen. Elec., 270 F.3d at 150.

Several analogous cases arising in this Court offer persuasive guidance.  First, in Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669 (E.D. Pa. 1997), a Pennsylvania-based shirt manufacturer brought a breach of contract action against non-resident subcontractors due to their misrepresentation of their capability to meet their contractual obligations.  Id. at 672.  Upon review of the defendants' motion to dismiss for lack of personal jurisdiction, the court remarked that the defendants had reached into Pennsylvania to solicit the plaintiff to enter into a contract and, upon execution of the agreement, continued contact with Pennsylvania via mail and telephone.  Id. at 674. In addition, representatives of the defendants visited Pennsylvania in connection with the contract on two separate occasions.  Id.  Ultimately, the court held that "[d]efendants have purposely availed themselves of the opportunity to do business in Pennsylvania by voluntarily seeking out a Pennsylvania corporation with whom to contract.  Thus, defendants were aware that they were contracting with a Pennsylvania corporation and that a breach of contract would result in economic harm in Pennsylvania."  Id. at 675.  Although the defendants argued that they did not maintain an

8

office, bank account, real property, or telephone listing in Pennsylvania, the court responded that

"'where the defendants have received the benefits and protections of the forum's laws by engaging

in business activities with a forum resident, the courts have consistently rejected the notion that an

absence of physical contacts can defeat personal jurisdiction there.'"  Id. (quoting Mellon Bank, 960

F.2d at 1225) (further quotations omitted).  Accordingly, defendants were deemed subject to

personal jurisdiction in Pennsylvania.  Id.

Similarly, in Mickleburgh Mach. Co., Inc. v. Pacific Econ. Dev. Co., 738 F. Supp.159,

(E.D. Pa. 1990), the defendant was a California corporation in the business of procuring heavy

machinery in the United States for clients in Asia.  Id. at 160.  It had no office, mailing address,

tangible or intangible asset, employee, director, or agent in Pennsylvania, nor did it advertise in

Pennsylvania.  Id.  The defendant contacted the plaintiff, a Pennsylvania entity, for assistance in

finding new and used vertical boring mills on behalf of the defendant's foreign client.  Id. at 160.

The parties thereafter entered into an exclusive dealing agreement to that effect.  Id.  Although the

plaintiff originally secured a Tennessee seller of such a boring mill, the deal ultimately collapsed.

Id. at 160-61.  By way of several subsequent communications, the defendant indicated that it still

required the plaintiff's assistance to locate a seller and acknowledged the plaintiff as its sole

representative for those purposes.  Id. at 161.  The plaintiff, in turn, engaged in further efforts under

the agreement.  Id.  At some point, however, the plaintiff learned that the defendant purchased a

vertical boring mill directly from another machine company without using the plaintiff as an

intermediary.  Id.  The plaintiff brought suit for violation of the exclusive dealing agreement and the

defendant responded with a motion to dismiss the complaint for lack of personal jurisdiction.  Id.

On review, the court acknowledged that although the mere entry into a contract was

9

insufficient to establish minimum contacts:

> [I]n this instance PEDC played an active role in both developing and extending its contacts in the forum. PEDC initiated negotiations with the Pennsylvania plaintiff. PEDC and Mickleburgh communicated at frequent intervals over the telephone. PEDC sent written correspondence to Mickleburgh's Pennsylvania headquarters on at least ten occasions. Each letter further solidified the relationship between the two. In fact, in both the original agreement and in a subsequent letter PEDC acknowledges Mickleburgh's role as its purchasing agent. This is not a case where the defendant is a passive player or is unaware of the citizenship of the plaintiff. . . . PEDC cultivated the relationship with Mickleburgh and could reasonably expect to answer for any alleged misdeeds arising out of that relationship in Pennsylvania.

> PEDC could reasonably foresee that the signing of the agreement would lead to economic impact in this forum. . . . Although Mickleburgh spent most of its efforts to secure the boring mill in other states, it engaged in fiscally burdensome activity in Pennsylvania. Moreover, if the sale of the mill had been completed, the parties' contract called for performance by PEDC in Pennsylvania. PEDC was to deliver a letter of credit to a bank in Philadelphia out of which Mickleburgh was to draw its compensation. . . .

> Lastly, and perhaps most importantly, is that even after the first attempt to secure the boring mill failed, PEDC again sought Mickleburgh's aid in finding an alternative supplier showing that PEDC intended to "participat[e] in the continuation of th[e] relationship.". . . It seems that PEDC intended to create a long-term relationship with Mickleburgh going beyond just a single transaction. I find that PEDC purposefully established more than minimum contacts with Pennsylvania and could have expected to be "haled into court" here if a dispute with Mickleburgh developed.

Id. at 162-63.

Similarly, in the present matter, the Court finds that Defendants, a New Jersey resident and corporation, have sufficient minimum contacts with Pennsylvania to allow for the exercise of personal jurisdiction. The Amended Complaint avers that "the cause of action arises out of a contract performed by the Plaintiff in the Commonwealth of Pennsylvania; the parties had an ongoing business relationship; and the Defendants profited from that contract." (Am. Compl. ¶ 9.) Plaintiff Peter Guzzi's Affidavit, submitted in a Sur-reply Brief to the Motion to Dismiss, elaborates

further on the bases for this allegation.[3]  According to its averments, Defendants needed Plaintiff's

name recognition within the insurance industry in the Tri-state area.  (Pl.'s Sur-Reply to Mot. to

Dismiss, Ex. A ("Guzzi Aff.") ¶ 18.)  Thus, via oral agreement reached in early 2005, Joseph

Morano, Robert Gladstone, and Peter Guzzi contracted to each become a one-third partner in USBP.

(Id. ¶ 1.)  Thereafter, Plaintiff began working out of an office located in Willow Grove,

Pennsylvania.  (Id.)  From this office, Plaintiff conducted official USBP business from

approximately April 2005 through March 2007, and held himself out as a USBP representative.

(Id.)  In the course of the relationship, Plaintiff and Defendant Joseph Morano would often meet

with potential insurance vendors at the Pyramid Club, located at 1735 Market Street, Philadelphia,

Pennsylvania, where USBP maintained an office as a member.  (Id. ¶ 3.)  Indeed, multiple meetings

took place in Philadelphia, with companies such as Elder Health, Humana, and Conseco, to

negotiate agency agreements between USBP and the insurers for sale of insurance in various states,

including Pennsylvania.  (Id. ¶¶ 5, 7, 10.)  During these negotiations, the parties agreed that Plaintiff

would work in the Commonwealth, on behalf of USBP, to recruit agents to sell insurance policies to

individuals residing in Pennsylvania.  (Id. ¶ 16.)  Ultimately, and again in furtherance of the

Agreement, Defendants obtained pecuniary benefit from Plaintiff's creation and maintenance of

business relationships involving such insurance policy sales in Pennsylvania.  (Id. ¶¶ 5-7.)  For

every insurance policy sold by the Pennsylvania agents recruited by Plaintiff, USBP received a

commission from the underwriting insurance company.  (Id. ¶¶ 10-12.)  Plaintiff's work was

---

[3]  Although the Court has some concern with Plaintiff's failure to submit this affidavit until his
Sur-reply Brief, we note that Defendants' original Motion to Dismiss offered very little substance
to which Plaintiff could reply.  It was not until Defendants' Sur-reply Brief that Defendants
clarified and expanded on their arguments.

performed entirely on behalf of USBP and not on behalf of any of the insurance companies with which USBP contracted.  (Id. ¶¶ 16-17, 19.)  Finally, Plaintiff suffered all harm in Pennsylvania in the form of lost wages owed to him under the terms of the agreement with Defendants.  (Am. Compl. ¶¶ 27, 33.)

Taking as true the facts set forth in both the Amended Complaint and Plaintiff's affidavit,[4] the Court finds more than sufficient minimum contacts to support the exercise of personal jurisdiction.  Defendants reached into Pennsylvania to enter into a contract with Plaintiff. Thereafter, Defendants and/or their agents attended several meetings with Plaintiff and potential customers in hopes of furthering their business.  These efforts gave rise to a long-term relationship between the parties – going beyond just a single transaction – from which Defendants hoped to, and did in fact, obtain substantial pecuniary benefit from Pennsylvania.  In short, Defendants purposefully created minimum contacts with Pennsylvania and could have expected to be "haled into court" here if a dispute with Plaintiff arising out of the agreement developed.

In an effort to avoid this outcome, Defendants offer two alternative arguments, both of which the Court finds unavailing.  First, Defendants contend that the Pennsylvania long-arm statute, 42 Pa. C.S. § 5322, is a direct indication that the Pennsylvania General Assembly did not intend to

---

[4]     Defendants' response to these allegations does nothing more than pose a series of questions asking Plaintiff to detail more specifics of the alleged contacts, the meetings, who attended, what was discussed, etc.  This argument, however, misconstrues Plaintiff's pleading obligations.  Although the Federal Rules of Civil Procedure require factual allegations sufficient to raise the right to relief above the speculative level, prevailing jurisprudence maintains Rule 8(a)'s general requirement of only a short and plain statement setting forth the right to relief. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).
        To the extent that Defendants dispute the facts set forth in Plaintiff's affidavits and supply their own contrary allegations, the law requires that, at this stage, the Court reads the facts in the light most favorable to Plaintiff.  Pinker, 292 F.3d at 368.

exercise jurisdiction over insurance agents that are merely recruiting agents within the Commonwealth of Pennsylvania.  Defendants go on to observe that Section 5322(a)(6) of the statute only extends to those (1) who directly insure persons, property, or risks in the Commonwealth, or (2) who control, are agents, or are directors of an insurance company incorporated in Pennsylvania. By omission, Defendants reason that the provision excludes all others in the insurance industry from the reach of the long-arm statute.

This argument, however, relies on two false presumptions.  First, nothing in Section 5322(a)(6) suggests that that provision is the exclusive source of personal jurisdiction over all persons engaged in the insurance business.  Indeed, the long-arm statute also extends to "[t]he doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object" and "[t]he doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts."  42 PA. CONS. STAT. § 5322(a)(1)(ii) & (ii).  Second, even to the extent that no portion of section (a) of the long-arm statute specifically encompasses Defendants' actions, section (b) expressly states that, "[i]n addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." Id. § 5322(b).  As indicated above, Defendants' contacts with the Commonwealth and efforts to purposefully avail itself of the privilege of conducting activities with the forum are sufficient to meet such basic constitutional standards.

Defendants' second, and somewhat more ambiguous argument, asserts that USBP acted

13

solely as a general agent of insurance company Humana, as well as other insurance companies.  As a result, USBP never directly contracted to insure any person, property, or risk located within the Commonwealth of Pennsylvania.  In fact, they note that once agents, such as Plaintiff, were recruited by Defendants to find insurance distribution channels, the agents completed their insurance sales directly with the insurance companies.

Aside from Plaintiff's challenge to Defendants' factual characterization of this relationship, Plaintiff correctly notes that even if Defendants acted only as a general agent of the insurance companies, this fact would not diminish their own personal contacts with the Commonwealth. Plaintiff has alleged that Defendants became licensed to sell insurance in the Commonwealth, intentionally entered into producer appointments to sell insurance in the Commonwealth, held business meetings in Pennsylvania to negotiate the terms of the contracts to sell insurance policies, entered and intentionally contracted with agents to sell insurance policies in the Commonwealth, and received a commission from the insurance companies as a result of such sales.  The simple fact that the actual policies sold were ultimately underwritten by other companies does not undermine Defendants' otherwise intentional contact with the forum.

In short, the Court finds that Plaintiff has both alleged sufficient minimum contacts by Defendants with Pennsylvania and established that the claims at issue arose out of such contacts. Accordingly, the first and second elements of the specific jurisdiction test have been satisfied.

### 2.    Whether the Assertion of Personal Jurisdiction Comports With the "Traditional Notions of Fair Play and Substantial Justice"

Defendants additionally challenge Plaintiff's showing under the third prong of the specific jurisdiction test, requiring that a reviewing court ensure that the exercise of jurisdiction otherwise

"comport[s] with 'fair play and substantial justice.'"  <u>Burger King</u>, 471 U.S. at 476 (quoting <u>Int'l</u>

<u>Shoe</u>, 326 U.S. at 320).  Specifically, Defendants offer the cursory argument that because they have

not had any contact with the Commonwealth of Pennsylvania and do not profit from the

Commonwealth, and because Plaintiff was not harmed or caused tortious injury in the

Commonwealth by Defendants, it "would be completely unfair for this Honorable Court to exercise

jurisdiction over the Defendants in this Case."  (Defs.' Mot. to Dismiss 9.)

        This argument, however, fails to mention, let alone analyze, the five factors that courts must

consider when balancing jurisdictional reasonableness, including:  (1) the burden on the defendant;

(2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining

convenient and effective relief; (4) the interstate and international judicial system's interest in

obtaining the most efficient resolution of controversies; and (5) the shared interest for the several

states in furthering fundamental substantive social policies.  <u>Burger King</u>, 471 U.S. at 477 (quoting

<u>World-Wide Volkswagen</u>, 444 U.S. at 292).  Such factors all weigh in favor of this Court's

assertion of personal jurisdiction.  Defendants suffer minimal burden in crossing the river from New

Jersey into Philadelphia to litigate this case.  Further, Pennsylvania bears a significant interest in

adjudicating the dispute and ensuring that its residents, particularly those doing business in the

Commonwealth, are not harmed.  Plaintiff, a Pennsylvania resident, has chosen this forum as a

means for him to obtain convenient and effective relief.  Finally, there are no procedural interests or

substantive social policies of other states that come into play.  Accordingly, the Court finds that the

exercise of personal jurisdiction would not offend any due process concerns.

        **3.**        <u>**Conclusion as to Personal Jurisdiction**</u>

        In sum, the Court finds that Plaintiff has met his burden of demonstrating facts sufficient to

15

support the exercise of personal jurisdiction.  By contrast, Defendants have not set forth any viable

considerations that would render jurisdiction unreasonable or unfair.  Thus, the Motion to Dismiss

for lack of personal jurisdiction is denied.[5]

## III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    <u>Standard of Review</u>

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not

stated a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6); <u>see</u> <u>also</u> <u>Hedges v. United</u>

<u>States</u>, 404 F.3d 744, 750 (3d Cir. 2005).  In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the

United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  <u>Id.</u> at 555.  Following these basic dictates, the Supreme

Court, in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), subsequently defined a two-pronged approach to

a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at

1949.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical,

code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff

---

[5]  In addition to the personal jurisdiction argument, Defendants set forth a two-sentence challenge
to venue that asserts, "[a]s discussed in Section I regarding lack of personal jurisdiction, venue is
improper in this Court for the same reasons.  As such, each of the allegations contained therein
are incorporated by reference to support the allegation that venue in the Commonwealth of
Pennsylvania is improper."  (Defs.' Mot. Dismiss 10.)  Because the Court rejected all of
Defendants' arguments in support of its Motion to Dismiss for lack of personal jurisdiction, we
likewise reject Defendants' venue claim.

armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint alleges, but does not show, an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).[6]

---

[6] Both parties submit evidence to this Court concerning the Rule 12(b)(6) Motion. None of this evidence may be considered without converting the Motion into a Motion for Summary Judgment under Federal Rule of Evidence 12(d), requiring both proper notice and an opportunity

**B.      Discussion**

The second portion of Defendants' Motion makes a general contention that the Amended

Complaint fails to state a claim upon which relief may be granted.  Defendants argue that because

the Amended Complaint fails to set forth specific allegations in support of the three alleged causes

of action — breach of contract, wage claim, and an accounting – it must be dismissed under Federal

Rule of Civil Procedure 12(b)(6).[7]  The Court addresses each cause of action individually.

**1.      Breach of Contract**

To establish a breach of contract under Pennsylvania law, a party must demonstrate (1) the

existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract;

and (3) damages.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).  "When a plaintiff

pleads a contract according to its legal effect, the complaint does not need to resort to formulaic

recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to

---

for further briefing.  As neither party has made such a request, discovery has yet to begin in this
case, and conversion would result in additional filings beyond the five briefs already submitted in
connection with this Motion, the Court disregards the extrinsic evidence and considers the
Motion solely under the Rule 12(b)(6) standards.  If desired, the parties may raise such evidence
in a properly-filed motion for summary judgment.

[7] Defendants' Reply to Plaintiffs' Reply Brief — *i.e.* their third brief on this Motion — raises,
for the first time, a statute of limitations argument.  Defendants specifically argue that "[i]t is
evident now that the most recent dealings the Plaintiff had with Defendants was in March 2007."
(Defs.' Reply Br. to Pl.'s Reply 3.)  They go on to assert that because the statute of limitations for
a contract claim under Pennsylvania law is four years, 42 Pa. C.S. § 5525(a), and the statute of
limitations for a Wage Payment and Collection Law claim is three years, 42 Pa. C.S. § 260.9a(g),
Plaintiff's claims are barred.
       Given the absence of any explanatory argument by Defendants, the Court must reject this
assertion.  Plaintiff's Complaint was filed on March 1, 2010.  Assuming *arguendo* that
Defendants are correct in asserting that the statutes of limitation began running in March 2007,
Plaintiff's Complaint was filed well within the statutory periods for the relevant causes of action.

place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond." Transport Int'l Pool, Inc. v. Ross Stores, Inc., No. Civ.A.06-1812, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009).

According to Defendants, the Amended Complaint fails to properly allege the existence of an oral agreement of employment because it fails to indicate start and end dates, when Plaintiff was paid, how much he has been paid, how "gross profits" were calculated, what his job title was, what he was responsible for, that he performed his duties, the last date he performed his duties, etc. (Defs.' Mot. to Dismiss 11-12.)  Further, Defendants assert that although Plaintiff claims to have secured several high level contracts, he failed to say how many he secured, who they were with, and how value was enhanced.  (Id. at 12.)

While the Amended Complaint in this action is indeed sparse, the Court finds that it alleges enough facts to survive a motion to dismiss.  Specifically, the Amended Complaint states as follows:

16. USBP is in the business of, among other things, selling insurance policies through large marketing channels.

17. In or about April of 2005, the Plaintiff and Defendants entered into a verbal agreement whereby Defendants agreed to pay the Plaintiff one-third of USBP's gross profits on distribution channels secured by the Plaintiff.

18. As a direct result of the Plaintiff's efforts, USBP secured several high level contracts, which greatly enhanced its value.

19. As a direct result of the Plaintiff's efforts, USBP secured distribution relationships that totaled more than four million dollars ($4,000,000) in revenue.

20. In or about March of 2007, the Defendants wrongfully terminated their agreement with the Plaintiff.

21. The Defendants' termination of the agreement was in breach of their duties of good faith and fair dealing

22. Despite the Plaintiff's efforts and success, the Defendants did not compensate him pursuant to their agreement, in clear breach of the agreement.

19

23.   Plaintiff generated significant revenue for the Defendants, but was not compensated pursuant to the agreement, in clear breach of the agreement.

24.   Additionally, the Plaintiff was not compensated for future revenue for application renewals, as provided in the agreement.

25.   At the time of the Defendants' breach, the Plaintiff was owed commissions and/or salary in excess of one hundred and seventy-five thousand dollars ($175,000), plus future profits on insurance contract renewals (the exact amount of which remains unknown and will require an accounting).

26.   Despite demand, the foregoing amounts have not been paid by the Defendants.

(Am. Compl. ¶¶ 16-26.)  Such facts, while minimalist in nature, make adequately clear that Plaintiff and Defendants orally agreed that Plaintiff would act, on behalf of Defendants, to secure insurance distribution channels, for which Plaintiff would be compensated one-third of UBS's gross profits on those channels of distribution.  Plaintiff performed his part of the agreement by securing such contracts, but Defendants failed to reciprocate by compensating Plaintiff as agreed.  Moreover, despite an open-ended relationship, Defendants wrongfully terminated the agreement.  Ultimately, Plaintiff has suffered damages in the amount of $175,000 plus future profits on insurance contract renewals.[8]

These allegations raise the right to relief to the level of "plausibility."  Defendants have not articulated a convincing reason as to why they need more details in order to respond or why Plaintiff should be held to a higher pleading standard.  Any further details of the contract and the transactions

---

[8]  Notably, Defendants' Reply Brief concedes – perhaps inadvertently – the existence of some sort of agreement to pay Plaintiff commissions on the securing of certain contracts.  Specifically, when arguing that Plaintiff is not an "employee" under the Wage Payment and Collection Law, they contend, "Plaintiff's logic regarding his theory of the case is completely misplaced.  He was paid as an independent contractor . . . *exactly what he was*.  He has not provided any law that states if you think you are going to be a partner and then find out later that you really are not than [sic] you must have been an employee.  Plaintiff was provided a 1099 for each of the years *he worked as an independent contractor for USBP* for the benefit of Humana."  (Defs.' Reply Br. 13 (emphasis added).)

20

at issue are fair ground for discovery.  Should such discovery fail to reveal the existence of a viable

breach of contract claim, Defendants may seek summary judgment.  At this early stage of the

litigation, however, the Court cannot find such allegations to be insufficient.

### 2. The Pennsylvania Wage Payment and Collection Law

The Pennsylvania Wage Payment and Collection Law ("WPCL") requires employers to pay

a separated employee his or her "wages or compensation earned" at the time of separation no later

than the employer's next regular payday.  43 PA. CONS. STAT. § 260.5(a).  Under the WPCL, an

employer, "[i]ncludes every person, firm, partnership, association, corporation, receiver or other

officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned

classes employing any person in this Commonwealth."  Id. § 260.2a.  In addition, "wages" include

"all earnings of an employee, regardless of whether determined on time, task, piece, *commission* or

other method of calculation."  Id. (emphasis added).  As explained by the Pennsylvania Supreme

Court, "[t]he Wage Payment and Collection Law provides employees a statutory remedy to recover

wages and other benefits that are *contractually* due to them."  Oberneder v. Link Computer Corp.,

696 A.2d 148, 150 (Pa. 1997) (emphasis added).  Accordingly, it requires a contract between

employee and employer that sets forth their agreement on wages to be paid.  Mavrinac v. Emergency

Med. Ass'n of Pittsburgh, No. Civ.A.04-1880, 2005 WL 2304995, at *8 (W.D. Pa. Sept. 21, 2005).

In addition, the WPCL applies only to "back wages already earned" and not lost future earnings.

Barsky v. Beasley Mezzanine Holdings, LLC, No. Civ.A.04-1303, 2004 WL 1921156, at *2 (E.D.

Pa. Aug. 30, 2004).

The Amended Complaint, in this case, incorporates the previously mentioned operative facts

into the WPCL claim and, in addition, alleges as follows:

36. At all times relevant herein, Plaintiff was an employee of USBP.

37. At all times relevant herein, USBP was an "employer" as that term is defined in 43 P.S. § 260.2a.

38. The monies owed to Plaintiff were and are compensation due to Plaintiff by reason of his employment.

39. The monies owed Plaintiff are "wages" as that term is defined in 43 P.S. § 260.2a. in that they are earnings of an employee determined on time, task, piece, commission or other method of calculation or were fringe benefits or wage supplements payable by USBP.

40. Defendants' willful and deliberate failure to pay Plaintiff the aforesaid wages is a violation of the Pennsylvania Wage Payment and Collection Law.

41. Because Defendants' failure to pay Plaintiff was in bad faith, Plaintiff is also entitled to claim a percentage of the total monies due to him, or the prescribed statutory amount (whichever is greater) as liquidated damages at the rate set forth in the Pennsylvania Wage Payment and Collection Law.

42. Further, Defendants are responsible for all attorneys' fees expended by Plaintiff in his efforts to recover the monies.

(Am. Compl. ¶¶ 36-42.)

As set forth above, Plaintiff has adequately pled the existence of a contract for compensation, which satisfies a mandatory prerequisite to recovery under the WPCL. While his breach of contract claim relies on an independent contractor theory, his WPCL claim alleges, in the alternative, that he was an actual employee of Defendants and was not paid his contractually-promised commissions. Such alternative pleading is entirely proper regardless of consistency. See Schirmer v. Principal Life Ins. Co., No. Civ.A.08-2406, 2008 WL 4787568, at *5 (E.D. Pa. Oct. 29, 2008). Although Defendants deny the existence of such an agreement and deny that USBP was an "employer," such denials simply create factual disputes that are not properly resolved at the Rule 12(b)(6) stage. Defendant has come forward with no jurisprudence indicating that, as a matter of

22

law, it could not be liable under this set of facts.  The Court thus denies Defendants' Motion to Dismiss this claim.[9]

## IV.  MOTION TO DISMISS FOR FORUM NON CONVENIENS

In the final portion of their Rule 12 Motion, Defendants seek dismissal of the case for forum non conveniens.  Upon consideration of the parties' arguments, the Court finds such dismissal unwarranted.

The United States Supreme Court has indicated that although "a plaintiff's choice of forum should rarely be disturbed," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981), a federal court "may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."  Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 189 (3d Cir. 2008) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)), cert. denied, 129 S. Ct. 127 (2009).  Thus, "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case.  Id. (quoting Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)); see also Delta Air Lines, Inc. v. Chimet, S.p.A., 619 F.3d 288,

---

[9]  Defendants offer no clear argument for dismissal of the accounting cause of action and the Court finds that it withstands the Motion to Dismiss.  The right to demand an accounting at law derives from Pa. R. Civ. P. 1021(a).  See Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1123-24 (Pa. Super. Ct. 1987).  An actionable claim for an accounting at law is necessarily incidental to a breach of contract claim where the failure of the breaching party to account leaves the injured party unable to calculate the money owed under the contract.  McGough v. Broadwing Commc'ns, Inc., 177 F. Supp. 2d 289, 301-02 (D.N.J. 2001) (applying Pennsylvania law).  As the breach of contract claim survives, in this case, the cause of action for accounting survives as well.

294-95 (3d Cir. 2010).

In applying the doctrine of forum non conveniens, courts first examine the existence and adequacy of an alternative forum for the litigation.  Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 160 (3d Cir. 2010).  If such an adequate alternative forum exists, the court must consider the appropriate amount of deference to be given to the plaintiff's choice of forum.  Id.  Finally, the district court must balance a series of public and private interest factors to determine whether trial in the chosen forum would result in oppression or vexation to the defendant, which is out of proportion to the plaintiff's convenience.  Id.  The private interest factors affecting the convenience of the litigants include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Piper Aircraft, 454 U.S. at 241 n.6 (quotation omitted); see also Delta Air Lines, 619 F.3d at 296. The public interest factors affecting the convenience of the forum include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (quotation omitted); see also Delta Air, 619 F.3d at 296.  A defendant seeking transfer or dismissal on forum non conveniens grounds must show that a balancing of the public and private factors "tips decidedly in favor of trial in the foreign forum."  Windt, 529 F.3d at 192 (quotation omitted).

In the case at bar, the parties concur that an adequate, alternative forum exists in New Jersey, but differ on whether the other forum non conveniens factors advocate dismissal of this action.

24

Turning to the second factor — the amount of deference accorded to Plaintiff's choice of forum —

it remains well-established that "a strong presumption of convenience exists in favor of a domestic

plaintiff's chosen forum." Id. at 190.  Beyond reiterating the personal jurisdiction and venue

arguments already rejected by this Court, however, Defendants provide no basis for overcoming this

presumption.  Moreover, they fail to recognize that the principle of forum non conveniens starts

with the understanding that jurisdiction and venue are *proper*, but the chosen forum is inconvenient

and/or oppressive to defendant.  Given no reason to disturb Plaintiff's selected forum, the Court

grants substantial deference to that selection.

With respect to the private and public interest factors, Defendants contend that:

> The public and private interests in this case strongly favor using New Jersey as the
> appropriate forum.  As stated above, Defendants live in New Jersey, Plaintiff has met
> the Defendants solely in New Jersey, and the controversy at issue has primarily taken
> place in New Jersey.  Any contract created in this case should be interpreted in
> accordance with New Jersey law.  To the Defendant's knowledge, all relevant non-party
> witnesses to this action reside in New Jersey.  All ease of access factors favor New
> Jersey.  The public and private interest factors strongly weigh in favor of New Jersey,
> and to hold trial in the Eastern District of Pennsylvania would result in oppression or
> vexation to the Defendants out of all proportion to the plaintiff's convenience.

(Defs.' Mot. to Dismiss 16.)

The Court, however, finds this argument both factually unsupported and legally

unconvincing.  The Eastern District of Pennsylvania and the District of New Jersey are separated by

nothing more than a bridge over the Delaware River.  Accordingly, private interest considerations

such as ease of access to sources, compulsory process for attendance of unwilling witnesses, cost of

obtaining willing witnesses, and other practical problems do not weigh heavily into the analysis.

Indeed, taking as true the allegations of the Amended Complaint, Defendants repeatedly attended

meetings at the Pyramid Club in Philadelphia, thus undermining any claim of inconvenience

associated with litigation in Philadelphia.  As to the public interest factors, the Court cannot find,

absent further factual development, any particular grounds for the application of either Pennsylvania

or New Jersey state law.  Moreover, Defendants identify no administrative difficulties or unfairness

issues.  Finally, because Plaintiff is a Pennsylvania resident, this forum necessarily maintains an

interest in adjudicating this dispute.  In short, none of the aforementioned factors favor disruption of

Plaintiff's choice of forum.  Thus, Defendants' Motion to Dismiss for forum non conveniens is

denied.[10]

V.      CONCLUSION

        In light of the foregoing, the Court can not identify any basis, at this juncture, for

Defendants' requested Rule 12 relief.  First, as to the Motion to Dismiss for lack of personal

jurisdiction, the Amended Complaint, together with Plaintiff's submitted affidavits, reveal that

Defendants had sufficient minimum contacts such that they could be expected to be haled into Court

into Pennsylvania and that the exercise of personal jurisdiction over Defendants will not violate

traditional notions of fair play and substantial justice.  Second, with respect to the Motion to

Dismiss for failure to state a claim upon which relief may be granted, the Amended Complaint —

---

[10]  Defendants seem to confuse dismissal for forum non conveniens and transfer pursuant to 28
U.S.C. § 1404(a), as they request that the Court "transfer this action to New Jersey for *forum non
conveniens*, 28 U.S.C.A. § 1404."  (Defs.' Mot. to Dismiss 17.)  Forum non conveniens is a
means of dismissal of the case, while § 1404 is a statutory method by which a court may transfer
a case to any other district "where it might have been brought" if this transfer is "for the
convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a);
see also Windt v. Qwest Diagnostics, 544 F. Supp. 2d 409, 432 n.32 (D.N.J.) ("Forum non
conveniens and 28 U.S.C. § 1404(a), a change of venue provision, differ in their purposes,
operation, and consequences; though they have common roots in legislation, they are entirely
independent phenomena."), aff'd, 529 F.3d 183 (3d Cir. 2008), cert. denied, 129 S. Ct. 927
(2009).  To the extent Defendants implicitly request a § 1404(a) transfer, the Court finds such
transfer is unwarranted.  Neither party offers a proper § 1404 argument and this Court's own
review of the § 1404(a) factors favors maintaining the action in this forum.

while perhaps narrowly meeting the <u>Twombly</u>/<u>Iqbal</u> standards — raises Plaintiff's right to relief to the level of plausibility.  Finally, Defendants provide no viable basis on which the case should be dismissed for forum non conveniens.  Accordingly, the Motion is denied in its entirety and Defendants are directed to file an Answer within twenty days from the date of the accompanying Order.